Jeffrey G. Winter
DUROCHER & WINTER, P.C.
118 6th St. South
P.O. Box 1629
Great Falls, MT 59403-1629
(406) 727-4020
jwinter@mtlawyers.net
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| CLAIRE ABBOTT,<br>Personal Representative of the Estate of<br>Granville Stuart Abbott,<br><br>       Plaintiff,<br><br>  -vs-<br><br>UNITED STATES OF AMERICA,<br><br>       Defendant. | Cause No.<br><br>**COMPLAINT** |

Plaintiff, by and through her attorneys, alleges:

1.  Plaintiff Claire Abbott is a citizen and resident of Shelby, Montana. She is the duly appointed and acting Personal Representative of the Estate of

Granville Stuart Abbott, pursuant to Letters issued by the Montana Ninth Judicial District Court, Toole County, Montana, on March 26, 2020 under Cause No. DP 20-001.  Plaintiff is the surviving spouse of Granville Stuart Abbott, who died on August 30, 2018.  The decedent, Granville Stuart Abbott, was survived by Plaintiff and his three children, Alexander Abbott, Gary Abbott, and Abigail Abbott.

2. This Court has jurisdiction over this case pursuant to the Federal Tort Claims Act, 28 U.S.C. 2671, et seq., and 28 U.S.C. § 1346(b), in that Plaintiffs' claims arise from negligent acts and omissions of Marias Healthcare Services, Inc., Todd Gianarelli, MD and Mechelle D. Lewis, MD, who are deemed to be employees of the Public Health Service pursuant to the Federally Supported Health Centers Assistance Act (42 U.S.C. §§ 233(g)-(n)).

3. The negligent acts and omissions that are the subject of this action were committed by persons deemed to be employees of the Public Health Service while acting within the course and scope of their employment.  This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1346(b).

4. This survival and wrongful death action is brought by Plaintiff in her representative capacity, on behalf of the estate and the heirs and successors in interest of the decedent.

5. Plaintiff's claim was filed in writing with the United States on August

7, 2020, with additional supporting documentation to complete the claim being submitted October 12, 2020 and November 2, 2020. The United States has not responded, and more than six (6) months has elapsed. Accordingly, Plaintiff has appropriately exhausted her administrative remedies.

6. The acts and omissions giving rise to this claim occurred in Glacier County, Montana, which is within the Great Falls Division. Venue is proper in the Great Falls Division pursuant to Local Rule 3.2(b).

7. On August 14, 2018, at approximately 20:06 p.m., the decedent, Granville Stuart Abbott, presented to the Marias Medical Center ("MMC") emergency room in Shelby, Montana. His chief complaint included a burning sensation in the epigastric region and his "left side went numb." Todd Gianarelli, MD noted the burning sensation had occurred the previous day but Mr. Abbott woke up with the left sided numbness, "the side he was laying on." Mr. Abbott had no nausea, vomiting, chest pain or shortness of breath. Mr. Abbott's cardiac medical history was notable for history of cardiac disorders, myocardial infarction, coronary stent, cardiac catheterization, and chest pain. Dr. Gianarelli documented a cardiovascular exam including a regular rate and rhythm and normal heart sounds.

8. Laboratory tests were ordered, drawn at 20:15 p.m. and results were called to Dr. Gianarelli at "830." Abnormal results included a urine glucose of 3+

(normal negative), blood glucose of 473 (normal 65-99 mg/dL), sodium was 133 (135-145 mmol/L), albumin 3.2 (3.5-5.0 G/DL), alb/glob ratio 0.8 (1-2 ratio). Cardiac markers included a Troponin I of 0.02 (0.00-0.07 ng/mL) and NT pro-BNP of 152 (0-70 pg/mL).

9. An EKG was ordered and performed at 20:23 p.m. Dr. Gianarelli reviewed the EKG. Documentation on the EKG noted "sinus rhythm...inferior infarct, old...abnormal ECG." "Unconfirmed diagnosis" was also stated on the test result.

10. Dr. Gianarelli diagnosed Mr. Abbott with diabetes mellitus. Mr. Abbott was instructed to see his primary care physician that week for a recheck and diabetes education, and to "return for any issues." Mr. Abbott was prescribed Metformin HCl 500 mg by mouth twice a day. He was provided discharge instructions and discharged home at approximately 22:00 p.m.

11. Mr. Abbott returned to the MMC emergency room the following day, August 15, 2018, at 09:24 a.m., where he was again seen by Dr. Gianarelli. Mr. Abbott complained of left shoulder pain. Pain was described as chronic and waxing and waning. Mr. Abbott had no new symptoms from the previous night's visit except "more pain today down to finger tips and less numb."

12. Dr. Gianarelli examined Mr. Abbott's left upper extremity, which as

notable for tenderness in the shoulder and elbow. Cardiovascular exam was "normal." Dr. Gianarelli noted in the narrative section of his report that Mr. Abbott "says that his new dm diagnosis made him very nervous that his sugar had gone high and that is why his shoulder was hurting so bad today. so he wanted to get it checked. sounds like anxiety component."

13. Labs were drawn at 10:04 a.m. on August 15, 2018. Blood glucose was 313 (normal 65-99 mg/dL), improved from the evening prior. Sodium was within normal limits. His albumin and alb/glob ratio remained unchanged from the night before. A HGB A1C (test to diagnose diabetes) was ordered and noted to be increased to 10.9 (4.4-6.4 %.) Cardiac markers included Troponin I which was normal at 0.04 ng/mL but increased from the evening before. No NT pro-BNP was drawn on this date. A left shoulder x-ray was performed which showed mild degenerative changes and calcification adjacent to the greater tuberosity.

14. An EKG was performed at 10:20 a.m. on August 15, 2018, but it was not signed to indicate it was reviewed by a physician. The automatically generated report showed a "sinus rhythm…inferior infarct, old…abnormal R-wave progression, early transition…abnormal ECG."

15. No medications were administered during Mr. Abbott's visit to the MMC emergency room on August 15, 2018. Mr. Abbott was discharged home at

approximately 11:45 a.m. with a diagnosis of diabetes mellitus and left shoulder pain. He was instructed to establish care with a PCP for his diabetes mellitus and was referred to physical therapy for his left shoulder. Mr. Abbott's discharge instructions indicated that he should "call with problems" and "see back as needed or with concerns," with no further detail or explanation.

16. Mr. Abbott was scheduled for a pre-employment physical on August 16, 2018 with Joan Walton, FNP and Todd Gianarelli, MD, at Marias Healthcare Services, Inc. ("MHS") in Shelby, Montana. However, MHS advised Mr. Abbott to re-schedule his pre-employment physical, so it did not take place as scheduled on August 16, 2018.

17. On August 17, 2018, Mr. Abbott presented to Mechelle D. Lewis, MD at MHS for "follow-up to ER visit for lt shoulder pain where he was diagnosed as diabetic." Dr. Lewis' notes do not mention any history of cardiovascular issues, despite Mr. Abbott's documented cardiac medical history of cardiac disorders, myocardial infarction, coronary stent, cardiac catheterization, and chest pain. No cardiovascular examination was performed on August 17, 2018. A urinalysis was completed, which indicated blood glucose of 500. No other testing was performed. Dr. Lewis planned to aggressively treat Mr. Abbott's high blood sugar, and recommended that he "reduce the use of the shoulder for now."

18. On August 22, 2018, Mr. Abbott was evaluated by Dr. Lewis at MHC for a pre-employment physical for a job with Somont Oil Company. History of present illness was documented as "Stuart presents to the clinic today for a pre-employment physical for Somont. Upon arrival, he is diaphoretic, breathing heavily. He states his "pleuricy" is "Kicking his ass." I checked his vital signs and brought him back to the exam room to see the Doctor. He appears in distress and not able to complete the physical portion of the exam." His vital signs were a blood pressure of 140/90, heart rate of 106, and respirations 24. On exam, Dr. Lewis documented that Mr. Abbott was in moderate distress. He was diaphoretic, his color was greyish, and he was having pain in the substernal area. Dr. Lewis noted Mr. Abbott had been having chest pain "on and off for several days." He stated that the pain had gotten worse for a bit about 3 to 4 days ago but now the pain was "steady." Dr. Lewis encouraged Mr. Abbott to go to the MMC emergency room immediately and he complied. He was taken to the emergency room via wheelchair.

19. Mr. Abbott was evaluated for a third time by Dr. Gianarelli in the MMC emergency room on August 22, 2018 (the first two times being August 14 and 15). At approximately 17:00 p.m., in the emergency room, Mr. Abbott's blood pressure was 109/76, heart rate 93, respiratory rate was 18 and oxygen saturation was 98%

on room air. Chief complaint was documented as "chest pain." In the history and physical, Dr. Gianarelli documented that Mr. Abbott had "substernal burning/pain for awhile." He was experiencing some nausea and "maybe diaphorisis [sic]." Physical examination was negative.

20. A chest x-ray was performed at 15:11 p.m. Richard Friedman, MD reviewed the x-ray and documented "mild cardiac prominence…findings raise concern for a degree of mild CHF fluid overload…" The EKG obtained at 15:53 p.m. was abnormal with "lat Q or ST-T abnormalities." The EKG was not signed by a physician. Laboratory results drawn at 16:06 p.m. revealed an elevated Troponin I of 6.38 [0.00-0.07 ng/mL] and an elevated NT pro-BNP of 1544 [0-71 pg/mL]. Mr. Abbott was given Nitroglycerin 0.4 mg sublingual [for chest pain], Aspirin 324 mg chewable [mild blood thinner], and Lovenox 30 mg [blood thinner].

21. Dr. Gianarelli diagnosed a non-STEMI (non-ST elevated myocardial infarction). Arrangements were made to transfer Mr. Abbott to Benefis Hospital in Great Falls, MT via air transport. Benefis Mercy Flight was dispatched at 16:52 p.m. to Marias Medical Center. The flight crew arrived at 17:31 p.m. and left Marias Medical Center at 17:57 p.m. Documentation of the history of present illness was authored by Shawn Derby, RN and/or Rhett Groutt of the flight crew. Of significance, it was noted "per Dr. Gianarelli, 12 lead EKG was indeterminate

for STEMI but concerning for MI over the past week…Dr. Gianarelli states need for cardiology consult and possible cath lab services."

22. Mr. Abbott arrived at Benefis Hospital at approximately 18:33 p.m. Upon arrival to the emergency room at Benefis Hospital, Dustin Stuart, DO evaluated Mr. Abbott and ordered an immediate cardiology consult. Mr. Abbott was admitted to the Intensive Care Unit at 19:00 p.m. in serious condition. Surjya Das, MD provided the cardiac consult and determined Mr. Abbott would benefit from an emergent cardiac catheterization due to a "high-risk acute coronary syndrome with likely completed recent anterior MI with post infarct angina."

23. On August 22, 2018, Dr. Das performed a left heart catheterization, selective coronary angiography, left ventriculography via right radial access approach as well as a percutaneous coronary intervention with drug-eluting stent times two to the proximal left anterior descending. Dr. Das noted in the selective coronary angiography "…LAD 100% proximal…Circumflex…with mild diffuse disease proximally…OM3 with 40% proximal stenosis…right coronary…area of 60% focal in-stent restenosis in the distal stent…" The left ventriculography showed "severe LV systolic dysfunction with anterior akinesis. Ejection fraction approximately 25%." Stents were placed in the left anterior descending artery to re-establish flow. The following day, on August 23, 2018, Dr. Das detailed in his

progress note "hospital day #1 status post PCI to LAD for delayed presentation of anterior MI (likely occurring August 18), LV EF 20-25%."

24.     On August 25, 2018, Mr. Abbott was discharged home from Benefis Hospital. Discharge diagnoses included the following: (1) coronary artery disease with occluded left anterior descending coronary artery status post percutaneous coronary intervention to the left anterior descending coronary artery; (2) mild ischemic cardiomyopathy with left ventricular ejection fraction 45% to 50%; (3) diabetes; and (4) morbid obesity.   Discharge instructions were as follows: Activity as tolerated, including a walk for 5-10 minutes three times daily; no lifting greater than 25 pounds until seen in follow up; set up for Phase II Cardiac Rehab in Shelby; controlled carbohydrate diet; decrease exposure to secondhand smoke; and follow up with Sarah Roberts at Cut Bank Clinic on September 4, 2018.   Mr. Abbott's discharge medications were Dulaglutide, Metformin and Glipizide for diabetes; aspirin and Brilinta (both blood thinners); Lisinopril and Coreg for blood pressure control; Atorvastatin for cholesterol; and Omeprazole for reflux.   Other discharge instructions included monitoring his weight daily, and to call health care provider if increasing shortness of breath or weight increase by more than 5 pounds.

25.     On August 28, 2018 at 11:33 a.m., Mr. Abbott's wife, Claire Abbott, placed a call to MHC.   Dana Barnes of MHC documented the incoming call as

follows: "Concern/Issues: Shortness of Breath."   Detail Communication Comment: "Call regarding Shortness of Breath.   Pt's wife called the office to try to schedule an appointment to see Dr. Lewis for shortness of breath following cardiac catheterization.   Dr. Lewis did not have any available appointments but told the office staff to instruct patient to be seen in the ER for reported symptoms due to recent hopsitalization [sic] and cardiac procedure."   However, there was no return call to Mrs. Abbott documented indicating she had been instructed to take Mr. Abbott to the emergency room.

26.   Mr. Abbott presented to Dr. Lewis at MHC at 10:30 a.m. on August 30, 2018 for complaints of shortness of breath.   History of present illness was noted as "...SOB - follow-up to ER/catheterization.   SOB continues - difficult to sleep or ambulate.   Pain has gone from chest and shoulder.   Has had diarrhea since hospitalization.   Checking BGL 3 x a day." Vital signs were documented at 10:46 a.m. as blood pressure of 104/68 and heart rate of 74.   Oxygen saturations were 95% and no respiratory rate was documented.   No cardiovascular examination was performed.   Dr. Lewis recorded her assessment as "acute ischemic heart disease, unspecified..."   She noted that Mr. Abbott was short of breath and was reporting orthopnea.   She further stated "this may resolve as the heart muscle heals, but if it has not improved by next week, he is to follow up for additional work up."   A

referral was made for cardiac rehab. No other treatments or interventions were documented.

27. Montana EMS was dispatched to Mr. Abbott's home on August 30, 2018 at 13:01 p.m. Upon arrival to Mr. Abbott at 13:05:10 p.m., EMS documented that Mr. Abbott was found "sitting on the couch, pale, gray, no pulse, no respiration's [sic] pupils fixed and dilated." CPR was initiated and AED was hooked up. A total of four shocks were administered. Manual CPR was performed unsuccessfully over approximately 20 minutes. Mr. Abbott was intubated and transported to the MMC emergency room. Disposition in the EMS records was documented as "Pt dead at scene – resuscitation attempted (w/trans)."

28. Mr. Abbott arrived at the MMC emergency room at 13:21 p.m. Dr. Lewis was in the emergency room and treated Mr. Abbott. Dr. Lewis documented the history of present illness as "57 year old male with known CAD and recent MI s/p stents in the LAD on 8/ 22/18 presented to the ER via EMS with active CPR in progress. He had been seen in clinic earlier in the day with only a complaint of shortness of breath, which is a common complaint after MI and stenting. He had denied chest or shoulder pain, and his blood sugars had been better than previous. Just prior to being brought in he had a witnessed syncopal episode and EMS was called. When they arrived he was noted to be pulseless and apneic and was placed

on the monitor. The monitor showed v-fib and he received a shock, then went into a non-shockable rhythm. EMS monitored him per protocol, and noted return of a shockable rhythm, so continued CPR and transported him to the ER. He received a total of 5 shocks per EMS report. On arrival to the ER manual CPR was in progress with good compressions being performed". Exam was documented as "He arrives on the EMS stretcher with CPR in progress. Monitor check with CPR held shows asystole. No respiratory effort noted, pupils are fixed and dilated. US of the heart shows no cardiac activity at all, with a well filled left ventricle and no pericardial effusion. At that time CPR was discontinued and the patient pronounced dead."

29. The acts and omissions of Marias Healthcare Services, Inc., Todd Gianarelli, MD and Mechelle D. Lewis, MD, which constitute a breach of the applicable standard of medical care include, but are not necessarily limited to, the following:

- Dr. Gianarelli failed to correlate Mr. Abbott's cardiac history, risk factors, lab results and EKG to formulate a potential cardiac diagnosis on August 14, 2018.

- Dr. Gianarelli failed to correlate Mr. Abbott's presentation and clinical findings on August 15, 2018 with the clinical information from his visit on August 14, 2018 to formulate a potential cardiac diagnosis on August 15,

2018.

- Dr. Gianarelli failed to identify on August 15, 2018 that Mr. Abbott's Troponin I level was elevated, even though it was a slight increase, from the previous nights' visit and determine there was possible heart muscle damage occurring.

- Dr. Gianarelli failed to order the NT pro-BNP lab test on August 15, 2018 for comparison with the significantly increased result the night before.

- Dr. Gianarelli failed to identify the "abnormal R-wave progression, early transition" on the 12 lead EKG performed on August 15, 2018 indicating potential cardiac involvement.

- When Mr. Abbott was discharged on August 15, 2018, Dr. Gianarelli failed to instruct Mr. Abbott to return to care if he experienced chest pain, shortness of breath, or any other symptoms of myocardial infarction, despite the fact that Mr. Abbott had presented to the emergency room twice with signs and symptoms of a progressing cardiac disorder and was at very high risk for myocardial infarction based on his symptoms, documented cardiac history and diagnostic results.

- Despite Mr. Abbott's documented cardiac medical history of cardiac disorders, myocardial infarction, coronary stent, cardiac catheterization, and

chest pain, Dr. Lewis failed to perform any cardiovascular examination when Mr. Abbott presented to her office on August 17, 2018.

- Dr. Lewis and MHS staff failed to follow up and ensure Mr. Abbott had returned to the emergency room and received appropriate care on August 28, 2018 when Dr. Lewis was unable to accommodate a visit to her office.

- Dr. Lewis failed to identify Mr. Abbott's continued shortness of breath and orthopnea as a cardiac related issue and to refer Mr. Abbott to a higher level of care when he presented to her office at MHS on August 30, 2018.

30. As a result of the breaches of the applicable standard of medical care by Marias Healthcare Services, Inc., Todd Gianarelli, MD and Mechelle D. Lewis, MD, Mr. Abbott died of a myocardial infarction on August 30, 2018, at the age of 57.

31. As a result of the breaches of the applicable standard of medical care by Marias Healthcare Services, Inc., Todd Gianarelli, MD and Mechelle D. Lewis, MD, the following damages have been caused:

**Damages Arising From Survival Action:**

i. Physical pain and suffering sustained by Granville Stuart Abbott up to the time of his death;

ii. Mental and emotional pain and suffering, distress and mental anxieties

      sustained by Granville Stuart Abbott up to the time of his death;

iii.    Loss of enjoyment of life by Granville Stuart Abbott;

iv.    Granville Stuart Abbott's lost earnings and lost earning capacity;

v.    Funeral expenses as a result of Granville Stuart Abbott's death; and

vi.    Such other damages as are fair and just;

**Damages arising from Wrongful Death Action**:

i.    Loss of services that Granville Stuart Abbott was anticipated to perform for his surviving spouse, Claire Abbott;

ii.    Loss of familial consortium, companionship, society, care, comfort and advice suffered by Granville Stuart Abbott's heirs;

iii.    Grief, sorrow and mental anguish suffered by Granville Stuart Abbott's heirs; and

iv.    Such other damages as are fair and just.

32.    Plaintiff claims all special and general damages allowable for wrongful death and survivorship for the estate and heirs of Granville Stuart Abbott.

WHEREFORE, PLAINTIFF PRAYS:

1.    For an award of special and general damages for all claims, including wrongful death and survivorship;

2.    For costs; and,

3. For all other relief the Court deems appropriate.

DATED this 9th day of February, 2021.

/s/ Jeffrey G. Winter
DUROCHER & WINTER, P.C.